IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICK C. VEARLING | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, et al. | : | NO.  08-2343 |

**REPORT AND RECOMMENDATION**

M. FAITH ANGELL                                                                                 June 15, 2009
UNITED STATES MAGISTRATE JUDGE

**I. INTRODUCTION.**

       This is an action brought pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's claim for supplemental security income ("SSI") under Title XVI of the Social Security Act.  Presently before this court for consideration is Plaintiff's Brief and Statement of Issues in Support of Request for Review [Docket Entry No. 12], Defendant's response thereto [Docket Entry No. 15], and Plaintiff's Reply Brief [Docket Entry No. 17][1].

       On April 14, 2009, counsel presented oral argument.  For the reasons that follow, I recommend that the relief requested in Plaintiff's Request for Review be granted and this matter remanded for further administrative proceedings consistent with this Report and Recommendation.

---

[1]       Hereinafter "Plaintiff's Request for Review," "Defendant's Response," and "Plaintiff's Reply," respectively.

**II. BACKGROUND AND PROCEDURAL HISTORY.**

Plaintiff was born on December 12, 1959. *Tr.* at 25, 73. He has at least a high school education. *Tr.* at 25, 322-323.[2] Plaintiff has not engaged in substantial gainful activity at any time since February 27, 2006, his SSI application date. *Tr.* at 18.

Plaintiff protectively filed an application for SSI benefits on February 27, 2006, alleging disability beginning on January 27, 2006. *Tr.* at 16. The Commissioner denied Plaintiff's claim initially. Plaintiff then requested a hearing before an Administrative Law Judge, which was held on July 11, 2007, before ALJ Daniel L. Rubini in Elkins Park, Pennsylvania. Plaintiff was present, and represented by counsel, at this hearing. In addition to Plaintiff's testimony, testimony was taken from Richard J. Baine, an impartial vocational expert. *Id.*

On October 3, 2007, ALJ Rubini issued a decision denying Plaintiff's claim for benefits, based upon a finding that he was not disabled as that term is defined in the Social Security Act. *Tr.* at 26.

Plaintiff's counsel filed an appeal on his behalf, requesting review of the ALJ's decision by the Appeals Council. On March 17, 2008, the Appeals Council denied Plaintiff's request for review, and adopted the ALJ's decision as the final decision of the Commissioner. *Tr.* at 5.

On May 20, 2008, Plaintiff's counsel filed an action in this Court, seeking review of the adverse decision. Respondent answered the complaint, Plaintiff filed a request for review and Defendant responded. The matter has been referred to me, by the Honorable Timothy J. Savage, for Report and Recommendation.

---

[2] In an SSI form dated April 27, 2006, Plaintiff states that he completed one year of college in 1977. *Tr.* at 119.

### III.  SOCIAL SECURITY DISABILITY LAW.

####   A.  Disability Determinations.

The Social Security Act authorizes several classes of disability benefits, including SSI benefits.  In order to qualify for SSI benefits, a person must be "disabled" under the Social Security Act and the accompanying regulations.

To establish a disability under the Social Security Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any `substantial gainful activity' for a statutory twelve-month period."  *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001)(quoting, *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir.1999)); 42 U.S.C. § 423(d)(1)(1982).  A claimant can establish a disability in either of two ways: (1) by producing medical evidence that one is disabled *per se* as a result of meeting or equaling certain listed impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2000), or (2) by demonstrating an impairment of such severity as to be unable to engage in any kind of substantial gainful work which exists in the national economy.  *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. §423(d)(2)(A).

The Commissioner's regulations provide a five (5) step sequential evaluation process for determining whether or not a claimant is under a disability.  20 C.F.R. §404.1520.  Step 1 states that an individual who is working will not be found to be disabled regardless of medical findings.  20 C.F.R. §404.1520(b).  Step 2 involves evaluating severe impairments.  20 C.F.R. §404.1520( c).

Step 3 requires determining whether the claimant has an impairment or combination of impairments which meets or equals a listed impairment in Appendix 1.  20 C.F.R. §404.1520(d). Step 4 states that if an individual is capable of performing past relevant work, he will not be found to be disabled.  20 C.F.R. §404.1520(e).  Step 5 requires that if an individual cannot perform past relevant work, other factors must be considered to determine if other work in the national economy can be performed.  20 C.F.R. §404.1520(f).  *See e.g.*, *Ramirez v. Barnhart*, 372 F.3d 546, 550-51 (3d Cir. 2004).

It is the ALJ's responsibility to resolve conflicts in the evidence, and to determine credibility and the relative weights to be given to the evidence. *Plummer v. Apfel*, 186 F.3d at 429 (3d Cir. 1999); *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993).  The ALJ's conclusions must be accepted unless they are without basis in the record.  *Torres v. Harris*, 494 F. Supp. 297, 301 (E.D. Pa. 1980), *aff'd*, 659 F.2d 1071 (3d Cir. 1981).

**B.  Judicial Review of Disability Decisions**.

The role of this court on judicial review is to determine whether there is substantial evidence to support the Commissioner's decision.  *Fargnoli v. Massanari*, 247 F.3d at 38 (3d Cir. 2001); *Knepp v. Apfel*, 204 F.3d 78, 84 (3d Cir. 2000).  Substantial evidence is defined as the relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000).  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence.  *Id.*

It is not the role of the Court to re-weigh the evidence of record or substitute its own conclusions for that of the ALJ.  *See e.g., Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Upon appeal to this Court, the Secretary's factual determinations, if supported by substantial evidence, shall be conclusive.  The conclusiveness applies both to findings of fact and to inferences reasonably drawn from that evidence.  *See Fargnoli v. Massanari*, 247 F.3d at 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.").

## IV.  THE ALJ'S DECISION.

The ALJ received medical evidence, heard Plaintiff's testimony, and received testimony from a vocational expert.  Proceeding through the five-step evaluation process, the ALJ determined that Plaintiff is a younger individual with at least a high school education.  He last worked in March 1997, and thus, satisfied the requirements of Step 1 of the sequential evaluation.  *Tr.* at 21, 25.

At Step 2, the ALJ found that Plaintiff has the following severe impairments: right shoulder pain, knee pain, depression and alcohol dependence.  The ALJ further found that since the alleged onset date these impairments have resulted in no restrictions in activities of daily living, moderate limitations in social functioning, and mild difficulties with regard to concentration, persistence and pace, with no episodes of decompensation.  *Tr.* at 18, 19.

At Step 3, the ALJ concluded that Plaintiff's impairments, considered singly and in combination, do not meet the criteria in Listing Sections 12.04 (affective disorders) and 12.09 (substance addiction disorders).  *Tr.* at 18.

At Step 4, the ALJ reviewed the entire record and determined that Plaintiff retains the residual functional capacity:

> "to perform light work except he may be limited to lifting no more than ten pounds with his right arm, may be mildly limited in his ability to climb, balance, work around heights, engage in stooping, kneeling, crouching, crawling, and reaching overhead with his right arm. The claimant may be limited in his ability to work in environments with temperature extremes and with high humidity. Due to his mental impairments, the claimant may be limited in his ability to deal with the public on a frequent basis."

*Tr.* at 19-20. The ALJ found that Plaintiff was not able to perform past relevant work as a truck driver (medium to heavy semi-skilled work) and as a maintenance worker/cleaner in a commercial bread bakery (unskilled medium exertional level work). *Tr.* at 24.

At Step 5, the ALJ found, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform. Examples of such occupations include: a sorter, inspector and clerical worker (all light exertional unskilled jobs), and a packer, inspector and sorter (at the unskilled sedentary level). The ALJ determined, therefore, that a finding of not disabled is appropriate. *Tr.* at 25-26.

**V.  DISCUSSION**

Plaintiff argues that the ALJ erred in: (1) rejecting the opinion of Plaintiff's treating psychiatrist without adequate explanation, based on mistakes of fact and mis-characterizations of the record; (2) relying on an incomplete hypothetical question to the vocational expert; and (3) rejecting Plaintiff's subjective testimony by mis-characterizing the medical evidence, selectively citing only those passages that supported his conclusion and omitting accompanying statements that were fully consistent with Plaintiff's allegations. *Plaintiff's Request for Review* at pp. 5-19.

**A.  The ALJ Erred In Rejecting The Treating Psychiatrist's Opinion
     Without Adequate Explanation.**

An ALJ should give "treating physicians' reports great weight, 'especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Brownawell v. Commissioner of SSA,* 554 F.3d 352, 355 (3d Cir. 2008)(quoting *Morales v. Apfel,* 225 F.3d 310, 317 (3d Cir. 2000)).  Such an opinion may be afforded more or less weight depending upon the extent to which supporting explanations are provided.  *Id.*

An ALJ may reject the opinion of a treating physician provided that the ALJ gives an adequate explanation for doing so.  In weighing a treating physician's opinion, the ALJ must consider several factors, including the length, nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record evidence, any specialization of the physician, and other factors which are raised by Plaintiff or of which the Commissioner is aware.  20 C.F.R. §416.927(d)(1)-(6).

It is clear that Plaintiff's treating psychiatrist considered him to be disabled.  In her Medical Source Statement, dated June 26, 2007, Dr. Onilda Herran, diagnosed depression "current and severe with psychotic features" and alcohol dependence, and gave a "guarded" prognosis.  *Tr.* at 256-57.  Dr. Herran identified the following as Plaintiff's symptoms: poor memory, appetite disturbance with weight change, sleep disturbance, mood disturbance, emotional lability, hallucinations in the past, alcohol dependence, recurrent panic attacks once a month, anhedonia, paranoia, feelings of guilt/worthlessness, difficulty thinking or concentrating, social withdrawal or isolation, decreased energy, intrusive recollections of a traumatic

experience, and hostility/irritability.  She noted a "good response" to medication (Prozac and Wellbutrin and antipsychotics) with no side effects.  Dr. Herran opined that Plaintiff's mental abilities and aptitude to do all types of work (unskilled through skilled) were poor or none to fair because of "poor tolerance for frustration, paranoid, intense mood swings."  *Tr.* at 256-259.  It was Dr. Herran's opinion that Plaintiff's functional limitations because of his mental impairments were: moderate as to activities of daily living, extreme in terms of difficulties in maintaining social functioning, and marked as to deficiencies in concentration, persistence and pace.  She noted four or more episodes of deterioration or decompensation.  *Id.* at 260.

 The ALJ gave Dr. Herran's opinion "less than substantial weight."  *Tr.* at 22.  Several of his reasons for doing so were improper.  The ALJ found that Dr. Herran's report was internally inconsistent because she described Plaintiff as being completely lacking in the ability to function due to his mental impairments, but noted that he responded well to Prozac and Wellbutrin.  *Id.*  These two findings are not inconsistent.  The Third Circuit has stated "a doctor's observation that a patient is 'stable and well controlled with medication' during treatment does not [necessarily] support the medical conclusion that [the patient] can return to work."  *Brownawell*, 554 F.3d at 356 (3d Cir. 2008)(quoting *Morales v. Apfel,* 225 F.3d at 319 (3d Cir. 2000)).

 The ALJ stated that Dr. Herran indicated that Plaintiff "suffers with hallucinations" which is not supported by the record.  *Tr.* at 22.  The ALJ mis-characterizes Dr. Herran's report.  Dr. Herran noted that Plaintiff's symptoms included hallucinations *in the past*.  This is supported by the medical record, specifically Plaintiff's initial assessment at Northwestern Human Services on August 23, 2004 when he reported past auditory hallucinations.  Plaintiff stated that in the

past he had heard voices telling him not to hurt people, which he believes saved him from doing things and getting into trouble.  *Tr.* at 207, 210.³

The ALJ opined that Dr. Herran's report, which was prepared shortly after Plaintiff told her that he was continuing to fight for SSI benefits and was prepared at the request of Plaintiff's attorney, "is obviously intended to held the claimant with his 'fight for SSI benefits' rather than being a well supported and well documented reflection of the claimant's present mental condition and progress."  *Tr.* at 22.  The ALJ's conjecture as to bias by Dr. Herran is not a proper basis for rejecting her report.  There is no evidence of record to substantiate a claim that Dr. Herran was biased in Plaintiff's favor other than her disability determination in his favor.  *See Medina v. Shalala*, No 92 C 8149, 1993 WL 498206 at *8 (N.D. Ill. November 30, 1993)("[. . .] [T]he possibility for incredible reports and bias is present for both sides.  This Court cannot condone a decision that ignores treating physician opinions simply because they come from treating physicians.").

The ALJ found the opinion to be inconsistent with "a preponderance of the objective medical evidence of record including the treatment notes of Northwestern Human Services Treatment notes."  However, the Northwestern Human Services treatment notes from August 23, 2004 to September 12, 2006 identify severe depression with psychotic features, anxiety and mood swings.  *Tr.* 188, 194, 197, 199, 205.  Plaintiff reported suicide ideation, thoughts of hurting others, feeling unsafe outside the home, being constantly tired, thinking about "weird

---

³ The ALJ accorded substantial weight to the report of Thomas Fink, Ph.D., a State Agency Medical Consultant.  *Tr.* at 24.  In his report, Dr. Fink wrote: "Recently (9/2/05) [Plaintiff] was psychologically evaluated and found to express symptoms of auditory hallucinations."  *Tr.* at 186.

stuff," being forgetful and not wanting to do anything . *Tr.* at 187, 188, 189, 191, 192, 194, 195, 197, 199, 201, 207, 208, 209.  Anhedonia, increased irritability, isolation, and an episode of physical violence are noted.  *Tr.* at 187, 188, 189, 191, 199.

Records from Northwestern Human Services dating from May 17, 2006 through July 5, 2007 reflect severe mood swings, isolated, poor social connections, poor memory, irritability and anhedonia.  *Tr.* at 264, 268, 274, 281, 282.

The ALJ found that Dr. Herran's report is contradicted by Plaintiff's testimony in which "he testified that he is the caretaker for an elderly gentleman and he also cares for himself."  *Tr.* at 22.[4]  Plaintiff's testimony reflects restrictions on activities of daily living.  Plaintiff testified that he eats at most once a day and on the day of the hearing he hadn't eaten for two days.  *Tr.* at 308.  Plaintiff stated that he showers once every seven days, wears the same clothes night and day for a week, and shaves once a week or once every two weeks.  *Tr.* at 312-313.  Plaintiff testified that the elderly man he lives with is a quadriplegic and that he has nursing care that comes to the house.  Plaintiff stated that he tries to get the elderly man breakfast, lunch and dinner by heating things in the microwave and that he talks to him and turns his TV on and off.  *Tr.* at 313, 314, 316.  Plaintiff testified that he doesn't do any cleaning, except trying to keep the bathroom from getting "real dirty," and that he walks out to the mailbox and once a week goes to the grocery store to get "little stuff."  *Tr.* at 306-07, 314, 317-18.

I conclude that the ALJ erred in rejecting Plaintiff's treating psychiatrist's opinion without adequate explanation.

---

[4] The ALJ noted that in addition to being "a caretaker for another person," Plaintiff "appears to provide for his own care with little or no difficulties."  *Tr.* at 19.

### B.  On Remand, the ALJ Must Apply The Proper Framework To Evaluate Plaintiff's Alcohol Dependence .

In §105 of Public Law 104-121, Congress amended the statutory definition of disability to read "[a]n individual shall not be considered to be disabled . . . if alcoholism . . . would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."  *Warren v. Barnhart*, 2005 WL 1491012 at *8 (E.D. Pa. June 22, 2005)(quoting Contract with America Advancement Act, Pub. L. No. 104-121, §105(a)(1), 110 Stat. 847, 852 (1996)(codified at 42 U.S.C. §423(d)(2)( C)).

The Social Security Regulations explain that if the claimant is disabled and there is medical evidence of drug addiction or alcoholism, it will determine whether the claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability.  The "key factor" in this determination is "whether [the Commissioner] would still find [the claimant] disabled if [the claimant] stopped using drugs or alcohol."  20 C.F.R. §416.935(a)&(b) (2005).  The Commissioner must "evaluate which of [the claimant's] current physical and mental limitations, upon which [the Commissioner] based [his] current disability determination, would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling."  20 C.F.R. §416.935(b)(2) (2005).

> "In making this determination, the disability must be evaluated independently of the substance abuse.  *Id.* at §416.935(b)(2).  'If the claimant's limitations are not disabling after parsing out the substance abuse related factors, the substance abuse is a material factor and the claimant is not eligible for benefits.'  'On the other hand, if the limitations are still disabling without the substance abuse, the claimant is eligible.'"

*Crawford v. Astrue,* Civ. A. No. 08-1160, 2009 WL 1033611, at *2 (E.D. Pa. April 15, 2009)(quoting *Bryant v. Barnhart,* Civ. A. No. 02-2708, 2003 WL 22245092, at *2 (E.D. Pa. July 30, 2003)).

It appears that the ALJ considered Plaintiff's alcohol dependence as a basis to find Plaintiff's testimony regarding his limitations not credible, and as a basis for giving Dr. Herran's opinion less than substantial weight.  Discussion of Plaintiff's alcohol dependence is interwoven into his analysis of Plaintiff's residual functional capacity.  *Tr.* at 21 ("The claimant, who has a long history of alcohol dependence, stated that it has been about two months since his last drink."), 21-22 ("The [Northwestern Human Services] treatment notes indicate that the claimant continues to drink alcohol.  A review of all the treatment notes of Northwestern fails to reveal any indication of a significant period of sobriety for the claimant."), 22 ("The record from Northwestern also suggests continued drinking by the claimant, non-compliance with his medications, and no indication of any significant period of abstinence. [ . . . ] In essence, there is no objective record of sobriety.  The record clearly indicates that the claimant continues to drink and that he is non-compliant.").  On remand, the ALJ should address Plaintiff's alcohol dependence in accordance with the framework established by the Commissioner's regulations.

## RECOMMENDATION

It is recommended that Plaintiff's Motion for Summary Judgment be GRANTED, and this matter be REMANDED to the Commissioner for further proceedings consistent with this Report and Recommendation.

```
 S/M. FAITH ANGELL
```
M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
Robert N.C. Nix Federal Building
900 Market Street, Suite 211
Philadelphia, PA   19107

**Chambers of**
**M. FAITH ANGELL**                            P:   (215) 597-6079
United States Magistrate Judge                 F:   (215) 580-2165

*FAX / MAIL COVER SHEET*

**CASE NO.**   08-2343                         **DISTRICT COURT JUDGE:** TJS

**TODAY'S DATE**: June 15, 2009                **LAW CLERK'S INITIALS**: JJK

**VIA FAX:**

| NAME | FAX NUMBER |
|---|---|
| (1)   Sharon Gornstein, Esq. | 215-357-3009 |
| (2)   Eda Giusti, Esq. | 215-597-4753 |